On behalf of Petitioner Cross Appleby, Carlos Bengoa, Mr. Steven Langley, on behalf of 50 Fuel, formerly known as 50 Fuel Bengoa, Mr. E. Kevin Sumner. Mr. Langley, may proceed. May it please the Court. Good morning, Your Honor. Mr. Counsel, would you please adjust your microphone since you're taller than most counsels standing there and we'd like to be able to hear everything you're saying. Understood, Your Honor. Thanks. People say I speak loudly, so hopefully that's not a problem. Again, may it please the Court, good morning to Your Honor and good morning to Counsel. Again, my name is Steven M. Langley and I do represent the appellant in this case, Cross Appleby, Mr. Carlos Bengoa. And as far as Mr. Bengoa as the appellant, we raised one issue on appeal and that is that the Court erred in awarding Mrs. Kuhl a $720,000 lump sum maintenance and gross payment. What evidence of the negative tax consequences to that was presented to the trial court? There was no evidence of tax consequences presented to the trial court during the trial, during the two-day hearing. And the reason, Your Honor, is this. Because until the trial court made that award, until the trial court said, I'm not going to award monthly maintenance, I'm going to do it in gross, there were no tax implications. There was no reason to discuss taxes. They had not, as I said in my brief, reared their head yet. So there's no dispute that these things were not discussed at the trial. There was a motion to reconsider filed, correct? There was a motion to reconsider that was filed. But then that was withdrawn, correct? That's correct, Your Honor. So how, if it was withdrawn, can we consider this issue on appeal when you voluntarily relinquished it? I mean, it was a true waiver. So how can we consider it if you waived it before the trial court? Your Honor, I don't see it as having been waived. You're not required to file a motion to reconsider. You can go straight to a notice of appeal if that's what you want to do. But if it wasn't raised, you said, how was it raised? During the hearing, the issue, I believe, in the counsel's brief and his argument is that it wasn't raised. The first argument is it wasn't raised at trial. Correct. We all agree that. The second is, generally speaking, in the motion to reconsider, the issue of tax consequences was played. It was in the motion itself. The transcript of the exchange between the trial judge and myself on the presentation of that motion is in the record. What's not in the record is body language, facial expression, tone of voice. After presenting that motion, it was clear that it was not going to be well received. It was never heard on the merits. It was never argued, briefed, et cetera. I discussed it with my client. We determined that that was not going to be the best course of action. Well, even if you lose, I mean, all of us who've tried cases can sometimes read the trial judge, but that does not relieve you of your responsibility of making a record and giving a trial court an opportunity to rule on the merits of your claim, correct? It doesn't relieve you of that responsibility, but as I mentioned, Your Honor, in this particular case, you're not required to file a motion to reconsider. You can. It's economical. It's practical. But filing a pleading and then withdrawing it before it's even considered on the merits, I don't consider it to be a waiver. But our point is we don't have anything to consider then. As far as? In terms of there was a discussion on the record with the judge. There wasn't any evidence presented as I read the record. And there was no ruling, per se. I mean, the trial judge's comments were, I'm ruling this way. Whatever the tax consequences may be, so be it. I'm paraphrasing, obviously. That's how I read the record. Number one, I believe it's a legal argument. It's not one that requires evidence. It's not a factual issue. It's not as though property were distributed in a certain way that raised evidentiary tax issues that would have been presented at trial. This was purely a legal argument that only was the result of the trial court's decision. This wasn't going to be an evidentiary motion to reconsider. There wasn't going to be any further testimony, no additional facts, nothing to reconsider in that area. It was strictly a legal issue that did not exist until the judge made his decision. And I don't believe, of course, if there's a case out there that says differently, then that's what it says. But I don't believe that by putting something in a motion and then opting to withdraw that motion before anything of substance takes place can be considered a waiver. Because, number one, the motion to reconsider isn't even required in the first place. It could have bypassed that. In practical terms, that's the best way to try and resolve the issue. But that wasn't going to happen. So with my input, with my discussion, we decided, my client decided, to go ahead and just withdraw that motion and go to the appellate court. And that's what we did. And I don't think that constitutes a waiver. I really don't, because it's not something that could have even been raised at the trial. And I don't think raising it in a motion, which he subsequently decided is not going to be well received, constitutes a waiver. Obviously, as I mentioned, Your Honor, if there's a case that says differently, then there is. It wasn't argued with a specific case by counsel. I didn't see anything specifically that said that. The motion to reconsider says, well, let me put it to you this way. If I had gone ahead and argued it on the merits and lost, then I could have gone ahead and taken it to the appellate court. He didn't agree with me. I'd like to try and persuade this panel that he made the wrong decision. So if I can present it and lose and still bring it here, and it's just a legal argument, why do I have to present it at all? Why can't I just say I don't think it's going to be well received? I'm just going to pull the plug and bypass this. So what is the gist, then, of the argument you would make apart from any discussion of waiver? Well, as far as the tax consequences of this maintenance and gross award, in fairness to everybody, at the time the decision was made, nobody knew for sure that a maintenance and gross award was essentially the functional equivalent of a property award, which means there are no tax consequences to the recipient. It's not deductible by the payor. That's IRS law. If it's going to be deductible, it has to meet certain conditions, and one of the conditions is that the obligation would stop upon the death of the recipient, which in this case would not. It's a vested right. So my client, based on that award, could not deduct that payment, which he had been deducting his monthly payment. So the judge misunderstood the implications of his award, and it's not insignificant to pay $720,000 of maintenance in a manner that's deductible, which would be each month, versus a manner which is not deductible, which would be the lump sum payment. Aren't you challenging the amount of the maintenance award anyway, the $720,000? Aren't you challenging that? It's a two-pronged challenge, Your Honor. The first argument is that the trial court erred in its analysis of the 504 factors. I can jump to that argument if you want, or I can wrap up the tax consequences issue before going there. Okay, go ahead. So by not appreciating the deductibility or lack thereof of the maintenance and gross award, what the trial court failed to consider is that Ms. Kuhl's affidavit, which outlined all of her financial needs, 30% of it, more or less, was federal tax liability. I need $1,850 each month to pay federal taxes based on the maintenance that I'm receiving from Mr. Van Gogh. Well, the judge made his determination based on her need, so he awarded a maintenance and gross lump sum to help her meet, in part, a federal tax liability need, which now no longer existed. But he also, you requested on behalf of your client a reduction in the amount. Correct. He did reduce the amount. Correct. But he made it payable in a lump sum because he articulated in his written decision a reason, his concern, that given the age of your client, that he would not be alive to pay that amount over that period of time. If it were 10 years, let's say, $6,000 a month for 10 years, that it would never get paid. And certainly I didn't see anything in the record about any insurance policy to cover that. So, in essence, the trial court did award some of what you advocated on behalf of your client, but the trial court also expressed a, I would say, considered and solid reason for awarding maintenance in gross, a lump sum, as opposed to periodic maintenance. There's a couple of responses to that, Your Honor. Number one, the law in Illinois is clear that the preferred method of maintenance is the monthly ongoing payments, which are then modifiable and or reviewable. For the first 12 years after the judgment for dissolution, that's what Mr. Bengoa had been paying was monthly maintenance payments that were tax deductible to him. Now, what the case law says is that if you're going to change from that method, you're going to change from the preferred monthly maintenance method, that there should be exceptional circumstances. Weren't there any circumstances here that you just pointed out, the age of the husband, health issues? Aren't those legitimate considerations? I would say, Your Honor, that those are considerations. I would not say that those are exceptional circumstances. There is no evidence in the record, as I stand here, that I can think of that takes into consideration Mr. Bengoa's health, raises that issue as a concern. He was 69 years old, I believe, at the time of the judge's decision. Correct. But I think it's an erroneous assumption to state that because somebody is 69 years old, that they may not live very long. That may be true, it may not be true, but there was no evidence presented that would allow the judge to make that leap of faith. I think that was inappropriate. It said in there also, I believe, that he's nearing retirement. There was no evidence that Mr. Bengoa was in a position to retire. I think it showed that the business was slowing down a little bit in terms of its productivity is the way I read that, not necessarily that he would retire. Well, that may be true, Your Honor. But what the record also shows, if you look especially in the financial affidavits, is that that wasn't the only business that Mr. Bengoa was in. He had other businesses as well, some property businesses, other corporations or LLCs. So even if Carlos Bengoa's CD distributors may have been slowing down, Mr. Bengoa had his fingers in several other businesses in other states. I don't recall anything from the record that indicates that he was slowing down his business pursuits or he planned to retire or that because he was 69 years old that his health was an issue. That's why, as you said, Your Honor, isn't that a consideration? It is. But I don't think it's an exceptional circumstance. And I'm going by what the law says, which is if you're going to change it, there should be some exceptional circumstances. Given the time constraints, let's turn for a minute to the 504 factors that are related to this. You argued, I believe, in your brief that the 504 factors did not justify the maintenance of 6,000 a month for 10 years. But aren't 504 factors really just a guide to determine whether or not maintenance is appropriate? So why and how is the amount and the duration relevant to these 504 arguments or points that were made? How does that fit in? So you're asking what factors support my position? It seems to me your arguments are conflated. 504 factors apply to whether or not there should be maintenance. You're using the 504 factors to say that the amount was too much and the length of time or the form was inappropriate. Well, I believe the argument, the main thrust of the argument itself is that there shouldn't have been any maintenance awarded. It should have terminated and stopped at the time of the trial. Yes, the court considers these factors, but considering the factors doesn't equate to making the right decision. You can consider the factors and still make an error in your decision, or you can still abuse your discretion. So my argument is, is that when the court looks at all these factors collectively, it doesn't justify the extension of maintenance in any form, monthly and or. Well, let me ask you about that. And I understand, and it's a common argument, that when you have a very large, vast marital estate, using common sense from a lay person, you award somebody millions of dollars, you would say, well, that should be fair enough, you know, under the circumstance for most people. But sometimes we bypass, and I think the trial court honed in on this. He said the court's task is not to decide, considering case law, whether the wife is able to reasonably support herself with these millions of dollars. Instead, the court is charged with determining whether she can support herself at the standard of living and joy during the marriage. And those last few words are the key here. This isn't just decided in a vacuum. You give $4 million to most people, and you give $720,000, you say they're going to accept her wife, right? Correct. So isn't the overarching consideration, or one of the considerations, the standard of living, the purpose of maintenance to ensure that she'll enjoy the same standard of living that the parties enjoy during the marriage, isn't that a factor? It is a factor, Your Honor. And I would go a step further, and I'd say that it's a very important factor. I think it's one of the ones that the court should consider in all cases. I mean, that's her argument in a nutshell, is that the standard of living requires this. Is that my position? Okay. I'll try to wrap this up, and I'll address that issue, Your Honor, because I think it's important. I don't think there's sufficient evidence. We're talking about putting evidence in during trial. I don't think there's sufficient evidence in this record to support what I would consider to be a high standard of living. Now, we look at what's in the record. They had a couple of nice houses and nice vehicles. Ms. Kuhl still has nice houses and nice vehicles, and they're all paid for. She's living just like she was living when she was married. The judge said in his own words that, in his findings, that these people lived a conservative lifestyle. They did not spend money on lavish vacations. They did not engage in fine dining. So, on the one hand, the judge uses the standard to support the award, but that language is anything but a high standard of living. It's a very conservative standard of living, and my argument to the panel is that she's still living at that same standard. She has a very nice house and nice vehicles, but they didn't travel. They didn't take luxurious vacations. They didn't spend lavishly. They didn't fine dine. I mean, Mr. Bengoa kept his nose to the grindstone and grew that business, and he did not engage in all that other stuff, and neither did she. The only evidence of trips were a couple of humanitarian trips that Ms. Kuhl took to foreign countries. There's no evidence that these people were traveling together, spending a lot of money together, living some sort of a high lifestyle. The judge himself said it's very conservative, and Ms. Kuhl herself said, I'm very frugal. She said that a few times. So she is living at the same standard because it really wasn't that high when they were married, and just because the business was worth millions of dollars and was growing, that doesn't mean that they were living on a high standard of living and doing all these things that people with a lot of money would do. They just didn't do that. So that was not the pattern that was set during the marriage, and she's living like she lived during the marriage right now. So, Your Honors, I appreciate the extra time, and I'll conclude with that. Thank you. Thank you. Thank you. Mr. Sommer. Thank you. May it please the Court, Counsel. Kevin Sommer, I represent Vicki Kuhl in this matter. She is the appellee and the cross-appellant. When I'm not quite certain as far as the procedure, should I address, should I respond and also address the issues as the cross-appellant at this time? That's your option. Okay. I will proceed that way. I'll first respond to the argument about whether the trial court abused its discretion on maintenance. Clearly, the trial court did not abuse its discretion on maintenance. The maintenance portion of the trial court's decision is very well reasoned and lays out all the factors and supports the award of maintenance in this case. But shouldn't the trial court have considered the tax consequences? No. Why not? Several reasons. First of all, as the panel already touched on, the fact that counsel waived that argument. First of all, waived it by not presenting any evidence at the trial,  that issue could have been anticipated at the trial and should have been, so that evidence would have been presented. Then when it came to mind to raise the issue, the appellant failed to, Carlos, failed to then present any argument when he had the opportunity to. Instead, voluntarily withdrew the motion, so there was a second opportunity. He shouldn't be allowed to have a third bite at the apple. Well, he says this is strictly a legal argument, and notwithstanding the fact that the motion to reconsider was withdrawn, that we can still consider it. Do you agree? No, I disagree, because there are facts that needed to have been presented. And I believe it was touched on earlier by one of the justices that we don't have any numbers. We can't even, or nobody can calculate what it was, what the impact was. There's no record before this court as to what the consequence was. So it can't be, this panel can't sit here and make that decision. In addition to that, even if it was to be considered, even if the tax consequences were to be considered, and, again, we don't have any idea what impact it would have had, I think it's fair with the amount, the value of this estate, that any tax consequences would have been insignificant. But, again, I don't believe we can even go there. So, again, the award of maintenance is certainly supported by the record. There was no abuse of discretion by the trial court. The trial court laid out extremely well in its decision the basis for the maintenance, and that should not be disturbed. But what specifically, what factors would you say justify it? I mean, you're concluding that the court didn't abuse of discretion. I mean, obviously, she got a fairly, by most accounts, significant marital estate. So how do you justify the maintenance? What's the need for it? The justification for the maintenance is that the parties had a 12-year marriage, that the wife did contribute, despite what was said by Carlos. She did contribute to the business. How did she contribute to the business? She contributed to the business by, just to name a few, when the business first started, they used the marital home to, a mortgage on the marital home to acquire the assets. It was a $15,000 mortgage. To get the cash. And Carlos borrowed her car. They switched cars. And they switched cars. Wasn't that essentially it? No. She sustained the family. And she did some paperwork. She did, and she sustained the family in the early years because she continued her employment at the post office. She landscaped a couple of the warehouses. It was she who found the opportunity for that business, was it not? And she's the one who found the business in the newspaper and suggested it to Carlos to begin with. She was the treasurer at first. She handled insurance issues. And it goes on and on in my brief. But in addition to that, some of the other factors, and this gets into my argument, which I won't go there yet, but into my argument for why the property disposition was unfair. It's the financial resources of these parties that existed after the marriage. Carlos had a far greater opportunity to amass capital, a far greater income than Vicki did. And those factors also support the award of maintenance in this case. Well, with respect to your argument on the cross-appeal about the distribution of the marital assets, I think you argue that the distribution 60-40 was an abuse of discretion and that it should have been the reverse, 60% to Ms. Kuhl and 40% to Carlos. But the combined total of $6.24 million in maintenance and property distribution is 60% of the marital estate of $10.4 million, is it not? And so why is that not an equitable distribution here? Because of Vicki still deserved to have more of the property distribution, even though the lumps on maintenance would have increased it further. Again, because of the vast disparity in the party's economic situation after the divorce. $13 million, that's the difference. So you're saying $20 million should have been, Carlos had $20 million and she only had, is that what you're looking at, those figures? Yes. At the beginning, before the distribution, Carlos had assets of $20,577,000. Vicki, before the disposition, had $2,135,000. Then after that, Carlos, by the time he made the additional cash to Vicki of $1.9 million and the maintenance payment of $720,000, his estate went down to approximately $18 million. Vicki's went up to about $4.7 million. And it's that difference. After the division, after the property division and after the payment of the lumps on maintenance, Carlos had about $18 million and Vicki had about $4.8 million. That's where I come up with that $13 million. Okay, but wasn't $10 million instead of completing a degree? She also had emotional issues that figured in here. So, I mean, if she didn't, if she had the opportunity to better herself or get a degree, again, talking about the amounts, I mean, she probably would not have been in the same situation to earn what Carlos earned. But on the other hand, what efforts did she make that would have justified more? Well, her emotional issues are actually a factor that benefit her because it prevented her from earning some income. But she also, she did a lot of charitable work and went to relief, engaged in relief efforts. She did some very good charitable work during this time. And she was going through some rough times, too, personally. I recited it in the brief that all the deaths that occurred and she had to deal with at that time. But the trial court considered all of that, did he not? He acknowledged her emotional concerns and her situation. The trial court did, but I still feel that the trial court, it was an abuse of discretion for the trial court to give that much weight to those factors when it should have been giving far more weight to the economic circumstances of the parties following the divorce. And it's for that reason primarily that I feel the trial court abused its discretion in the disposition and the allocation of the property. And the trial court should have awarded a minimum of 60% to Vicky and 40% to Carlos, just the opposite of what the trial court did. I don't have anything further unless the court has any questions. Thank you, counsel. Thank you. Mr. Langley, Rubolo. I want to get back to a few parting comments about this waiver issue. Number one, the issue was raised at the trial court. It was in a pleading. It was presented to the court. We did argue about it. If you look at the transcript, look at what the judge is saying to me in defending his decision and arguing with me when I presented it. So the fact that I saw it was going nowhere and voluntarily withdrew it after we both briefed it and take up a bunch of time and resources, I don't see a difference. I wasn't required to file a motion to reconsider. If anything was waived, it was the right to have the judge hear that issue, not the issue itself. The right is the motion to reconsider, which is separate from the right to appeal. Well, the court said, did he not, regardless of the tax consequences, that's the order. I'm paraphrasing, correct? Well, I think that was a different court appearance, Your Honor. I think when the initial order was entered in December of 2018, I believe at the time we presented that order for entry, Attorney Smith and I discussed with the trial judge about the tax implications because we had determined between the trial and that date that we don't know what they are. So it was at the entry of the initial order where Judge Barch made his comments about, look, I don't know what the law is. Whatever it is, it is. That's my order. I don't know. Okay?  The banter that I'm talking about, Your Honor, took place at the presentation of the motion to reconsider. And, again, it was raised, and he argued with me. You can see that in the transcript. And I don't see a procedural difference between taking it to the end and getting shut down by the trial judge or seeing the writing on the wall withdrawing that motion, let's just take it to the appellate court. There's two different rights involved here. And the only thing that my client waived was the right for the trial judge to hear that motion, not the substance of that motion itself. So I think that's the analysis. I haven't heard any particular case or anything come out from the panel that tells me I'm point blank wrong. So if you don't even have to file it in the first place, then it's simply a legal argument. What are the tax consequences? Well, if you pay $720,000 in $6,000 monthly payments, you're going to get to deduct $1,000, $500. She's going to have to claim that money. Then she does need that line item for federal tax liability. So if you award somebody that much money, thinking that it's taxable and it's not, then if it's not taxable, maybe he should have reduced the award. Maybe give her $500,000. Because once I give this to you, you're not going to have any more tax liability. So I think that is the difference. Yes, he's rich. He's got millions of dollars. You can say, what's a couple hundred thousand dollars to him? Maybe that is an argument. That's certainly one counsel's made. He's got so much money. What does this matter? Why is this a significant issue? Well, it is substantial. In his particular case, is it substantial? Maybe not. But we're talking about a couple hundred thousand dollars. If I can shift to the property division arguments, Your Honors, I think the court focused in on the most important factor in its decision, and that was which party contributed to the success of the business, which by implication, who helped create this $10 million marital estate. And I think that the court analyzed that correctly when it found and held that Carlos was the major contributor to the estate, the motivation and the driving force behind the business, and that justified the 60-40 split. And one thing that Mr. Van Gogh did in his brief, both to the trial court and to this panel, is cited to four specific cases that are somewhat analogous to the present case, which is the success of this business, the value of the marital estate, is attributable for the most part to the husband's efforts. And those courts correctly noted that and did the unequal distribution, 60%, 60%, 65, 74. But again, there would be no business had she not found the ad, had she not contributed the funds at the beginning toward the mortgage, switched the cars so that she really did make a contribution. So why should she, and she worked as sometimes referred to as Girl Friday throughout this time, why should she be penalized with a lower percentage of the business that they both built? Your Honor, number one, I think if you look at the record, and even if you look at Ms. Kuhl's own testimony, she says, yes, Carlos was the major force behind the business. It was mostly him. She admits that. That statement alone indicates, well, I maybe did 5% or 10% or 15%. She was instrumental in finding the business and getting it going, and there's something to be said for that. But that's not the same as working there 40, 60, or 80 hours a week, traveling, pounding the pavement, getting customers, building relationships, building value. It doesn't equate. Yes, but for her discovery, maybe we're not standing here. So she gets some credit, but it's not the kind of credit that you can say entitles her to 50%. The real hard work took place after the business was started, and I think the record clearly indicates who was doing that hard work, who was the sophisticated, savvy business person, who was working long hours, who was at the job every day and not at college. All right, but then how do you ñ why should the fact that she was not employable because of her emotional issues come into play here and be taken into consideration, along with whatever contributions she did make toward the business? You're asking if you take her mental health? If we had both of them, right, why wouldn't that justify a different allocation of the property? Well, there is a category in property division. One of the factors is the age and health of the person, okay? But there's also the contribution category, and if you're debilitated by a plethora of mental health issues, which if that's what was going on, that's what was going on. But if you're that debilitated by that, that you can't work the last 12 or 14 years, how can you say that, but before that, but before the divorce, I was very instrumental, even though I was dealing with all the same mental health issues. I was 50-50 with Carlos. Without me, this company isn't successful. We're divorced. Boom. I can't work for 15 years because I'm so debilitated with mental health issues. So what I'm saying is it is a factor. I would agree. And I think despite no expert testimony or corroboration or anything like that, I think we can all concede that there were some mental health issues, but that's one factor. And the main factor I think the court needs to look at is the contribution. But for his efforts, we're not here arguing over a $10 million statement. So those are my final thoughts on that, Your Honor. I would again stress that we have provided analogous case law to support the unequal distribution. Counsel's made factual arguments, but hasn't presented an analogous case which supports their position. And I think that that should factor into the decision. So thank you. Thank you. The court thanks both parties for the quality of your arguments today. The case will be taken under advisement. A written decision will be issued in due course. The court stands to resign.